UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
JUDICIAL WATCH, INC.,                           )
                                                )
    Plaintiff,                                )
                                                )
    v.                                        )    Civil Action No. 12-1785 (ESH)
                                                )
UNITED STATES DEPARTMENT                        )
OF HOUSING AND URBAN DEVELOPMENT,               )
                                                )
    Defendant.                                )
_____             )

## MEMORANDUM OPINION

Judicial Watch, Inc. brings this action against the United States Department of Housing and Urban Development ("HUD"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.* In response to a FOIA request made by plaintiff, defendant produced some documents in full, but withheld or redacted others pursuant to Exemptions 4, 5, and 6 to FOIA. Plaintiff now challenges the propriety of withholding and redacting these documents, as well as the adequacy of defendant's search. Presently before the Court are the parties' cross-motions for summary judgment. (Def.'s Mot. for Summ. J., Nov. 11, 2013 [ECF No. 20-1] ("Def.'s Mot."); Pltf.'s Cross-Mot. for Summ J., Dec. 18, 2013 [ECF No. 22] ("Pltf.'s Mot.").) For the reasons discussed below, the Court will grant defendant's motion for summary judgment and will deny plaintiff's motion.

## BACKGROUND

On April 4, 2012, plaintiff submitted FOIA requests to HUD, the Department of Justice, the Consumer Financial Protection Bureau, and the Federal Housing Agency seeking:

1. All communications with or about St. Paul, Minnesota, its residents, landlords, low-income properties or employees, specifically those exchanges:

   a. relating to the city's recent petition for certiorari to the U.S. Supreme Court, including the petition's withdrawal in February 2012;
   b. regarding "disparate impact" theory or analysis in the housing, landlord-tenant, or mortgage arena;
   c. involving any member of the U.S. Senate's Democratic Policy & Communications Committee, the House Democratic Caucus, or the White House, and their respective staffs, and;
   d. involving third parties such as the National Low Income Housing Coalition, Thomas Goldstein, or Walter Mondale and their respective staffs;

2. All invoices for travel, food, lodging, communications, or entertainment expenses incurred in connection with any "disparate impact" lawsuit.

(Def.'s Statement of Material Facts, Nov. 13, 2013 [ECF No. 20-2] ("SOF"), at ¶ 1). When HUD did not produce any documents, plaintiff filed a complaint seeking to compel their production on November 2, 2012. (*See* Compl. [ECF No. 11], at 3.)

On December 18, 2012, defendant produced documents responsive to plaintiff's FOIA request. (Declaration of Deena S. Jih, Nov. 13, 2013 [ECF No. 20-3] ("Jih Decl."), at ¶ 16.) These documents were found during searches conducted by HUD employees within the eleven departments deemed "most likely [to] have responsive documents." (*Id.* at ¶¶ 12-15.) Additional responsive documents were found during the course of searches performed in compliance with a broad congressional inquiry into HUD's activities which it turned over to plaintiff on March 4, 2013. (*Id.* at ¶ 17.) In addition to the documents provided in unredacted form, defendant also provided plaintiff with a lengthy *Vaughn* index identifying more than five hundred redacted or withheld documents. (*See* SOF at ¶ 8; Def.'s *Vaughn* Index for Challenged Withholdings, Ex. N., Nov. 13, 2013 [ECF No. 20-5] ("*Vaughn* Index.")) Each entry in defendant's *Vaughn* index included: (1) a document number; (2) a brief description of the document (including the author of the document, the recipient(s) of the document, and the date

and time the document was sent if applicable); (3) the specific exemption relied upon for withholding or redacting the document (e.g. "(b)(5)"); and (4) a narrative "justification" for withholding or redacting the document.

After reviewing defendant's *Vaughn* index, plaintiff informed defendant that it planned to challenge the redactions and withholdings identified therein. (Def.'s Mot. at 3.) In response, defendant re-examined all of the documents listed in its *Vaughn* index. Based on this review, defendant decided to release two documents either in full or with fewer redactions. (SOF ¶ 11.) Beyond these two documents, however, defendant informed plaintiff that it would stand by the other redactions and withholdings identified in its *Vaughn* index. (Def.'s Mot. at 3.)

Defendant now moves for summary judgment on the grounds that it has fulfilled its statutory duty by turning over all of the documents required and sufficiently describing those documents that it has withheld or redacted in a *Vaughn* index. Plaintiff cross-moves for summary judgment on the grounds that (1) defendant's search for responsive documents was inadequate and (2) defendant's narrative justifications articulated in its *Vaughn* index are legally insufficient to justify withholding or redacting documents under Exemption 5 to FOIA.

## ANALYSIS

### I. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or

declarations or documentary evidence to the contrary. *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol,* 623 F.Supp.2d 83, 87 (D.D.C.2009) (citations omitted). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. U.S. Dep't of Justice,* 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury,* 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). "An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 926 (D.C. Cir. 2003)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson,* 565 F.3d at 862 (quoting *Miller v. Casey,* 730 F.2d 773, 776 (D.C. Cir. 1984)); *see also Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). Finally, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " *Larson,* 565 F.3d at 862 (quoting *Wolf v. CIA,* 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

## II.     ADEQUACY OF DEFENDANT'S SEARCH

The first disputed issue in this case is whether HUD conducted an adequate search for responsive documents. "An agency fulfills its obligations under FOIA if it can demonstrate

4

beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990)). Under this standard, the relevant question "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*" under the particular circumstances of the case. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).

In order to meet this burden, an agency need not "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982). However, it must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). These affidavits are "accorded a presumption of good faith." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Yet, if "the record leaves substantial doubt as to the sufficiency of the search summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

In support of its position, HUD provides the Court with a sworn declaration from Ms. Deena S. Jih. Jih is an Attorney Advisor at HUD responsible for providing advice to HUD's Freedom of Information Act Office. (Jih Decl. at ¶ 1.) Jih's declaration describes HUD's search for documents responsive to plaintiff's April 4, 2012 FOIA request in great detail. First, HUD's Freedom of Information Act Office identified eleven divisions that were "most likely to have responsive documents."[1] (*Id.* at ¶¶ 12-13.) Next, as is HUD's practice, "each program's

---

[1] These divisions included: Office of Policy, Development, and Research; Office of Fair Housing and Equal Opportunity—Office of Information Services and Communications; Deputy General Counsel for

designated FOIA liaison . . . direct[ed the] FOIA request to the appropriate subject matter experts within their program areas." (*Id.* at ¶ 14.) These "subject matter experts" then searched for responsive documents using individualized techniques and search terms. (*Id.* at ¶¶ 14-15.) In addition to this targeted search, HUD also turned over responsive documents found during the course of searches conducted as part of a broader congressional inquiry. (*Id.* at ¶ 17.)

Plaintiff challenges the adequacy of defendant's search on two grounds. First, plaintiff argues that defendant "provides no evidence as to the search parameters – neither search techniques nor search terms – used to conduct the search for records responsive to Plaintiff's FOIA request." (Pltf.'s Mot. at 4.) Second, plaintiff argues that "each individual used his or her own search terms and techniques [and] defendant has [therefore] failed to demonstrate how [these] individualized search techniques and search terms used were reasonably calculated to uncover all responsive records." (*Id.* at 4-5.)

Plaintiff's first argument is factually inaccurate. In paragraph 15 of Jih's declaration and its sub-paragraphs which span more than three pages in length, Jih lays out in painstaking detail the search techniques and search terms used by each of the individual employees that it assigned to search for responsive documents.[2] In paragraph 17, Jih similarly lays out the details of the

---

Enforcement and Fair Housing; Office of General Counsel – Office of Fair Housing; General Counsel; Office of Public and Indian Housing – Financial Management Center; Office of Public and Indian Housing – Departmental Real Estate Assessment Center; Office of Public and Indian Housing – Office of Public Housing Investment; Office of Public and Indian Housing—Office of Public Housing Investment; Office of Public and Indian Housing – Grants Management Center; Office of Housing – Office of Multi-Family Asset Management Field Asset Management Division; and Office of Chief Human Capital Office – Office of Executive Secretariat Division –Correspondence Division.

[2] For example, describing the search conducted of documents belonging to HUD General Counsel Helen Kanovsky, Jih explains, "Helen Kanovsky's electronic files (including email) were searched by her assistant. The following search terms were utilized in the search: 'Magner,' '*Magner v. Gallagher*,' 'St. Paul,' 'disparate impact' and 'St. Paul,' 'disparate impact' and 'Magner'."

searches conducted in response to the congressional inquiry. These paragraphs provide more than sufficient evidence for this Court to assess the adequacy of defendant's search.

Plaintiff's second argument is also unpersuasive. While it is always true that an agency can engage in a more expansive search for responsive documents, the government is not required to search everywhere a document *might* be. Instead, it is only required to search those places where a document is *likely* to be. *See Oglesby*, 920 F.2d at 68; *Weisberg*, 745 F.2d at 1485. Though some agencies may choose to search for responsive documents in a centralized fashion using consistent search terms and techniques across various departments, nothing in FOIA's text or the relevant case law requires an agency to do so. To the contrary, it is permissible for an agency to rely on subject matter experts to conduct individualized searches for documents when responding to FOIA requests. *See Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515, 533-34 (S.D.N.Y. 2010) (expressly affirming as reasonable a "decentralized method of processing FOIA requests" using "different search terms in different offices").

Based on Jih's declaration, the Court is satisfied that the searches conducted by HUD were reasonably calculated to uncover all responsive records.[3] In the FOIA context, the government is afforded a presumption of good faith when it provides a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby*, 920 F.2d at 68. For the reasons discussed above, plaintiff has failed to present sufficient evidence to overcome this presumption. The Court therefore concludes that defendant's search for responsive documents was adequate as a matter of law.

---

[3] In fact, Jih's declaration demonstrates that defendant went above and beyond its duty by providing responsive documents found during searches unrelated to plaintiff's specific FOIA request. (Jih Decl. at ¶ 17.)

## III. SUFFICIENCY OF DEFENDANT'S *VAUGHN* INDEX

Plaintiff next challenges the sufficiency of defendant's *Vaughn* index arguing that "[a]lthough [the d]efendant does provide some justification for each withheld record, each justification is inadequate . . . ." (Pltf.'s Mot. at 7.) Moreover, in plaintiff's view, the defendant "failed to demonstrate that all records being withheld in their entirety are being properly withheld . . . [because it] has submitted nothing more than a declaration and *Vaughn* index chock-full of vague, conclusory statements and generalities." (*Id.* at 6.) In response, defendant maintains that the entries in its *Vaughn* index (along with the Jih Declaration) are both factually accurate and legally sufficient to fulfill its duty under FOIA. (*See* Def.'s Reply Mem. in Support of Def.'s Mot. for Summ J. and Mem. in Opp. to Pltf.'s Cross-Mot. for Summ. J., Jan. 23, 2014 [ECF No. 24] ("Def.'s Reply"), at 3-4.) The Court agrees with the defendant and will accordingly grant its motion for summary judgment.[4]

According to the D.C. Circuit, a *Vaughn* index "(1) . . . should be contained in one document, complete in itself, (2) . . . must adequately describe each withheld document or deletion, [and] (3) . . . must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant." *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979). While "it is the function, not the form of the index that is important," *Keys v. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987), the Court of Appeals has cautioned that "conclusory assertions of privilege will not suffice to carry the agency's burden . . . where no factual support is provided for an essential element of the claimed privilege or shield. . . ."

---

[4] Even if the Court were to agree with plaintiff and find that the *Vaughn* index was insufficient, summary judgment would still not be warranted. As defendant correctly argues, "[w]ere the Court to conclude that any document's justification or description in the *Vaughn* index was insufficient . . . the proper course would be to deny both parties' motion for summary judgment as to that particular document . . . and to give Defendant an opportunity to elaborate upon its description and justification . . . ." (Def.'s Reply at 3.)

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (internal citations and quotation marks omitted).

Plaintiff specifically challenges the redactions and withholdings made by defendant pursuant to FOIA Exemption 5.[5] FOIA Exemption 5 permits "an agency to withhold 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'" 5 U.S.C. § 552(b)(5). Among the privileges incorporated by FOIA Exemption 5 are the "deliberative process" privilege, the "attorney work product" privilege, and the "attorney-client privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) (citing *Burka v. HHS*, 87 F.3d 508, 516 (D.C. Cir. 1996)).

While there is some overlap between these privileges, each privilege protects a different interest and requires different "essential elements." *See Senate of the Com. of Puerto Rico*, 823 F.2d at 585; *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 132 (D.D.C. 2013). Specifically, the attorney work product privilege "shields materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" and "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (internal citations and quotation marks omitted). This privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds* by *Millner v. Dep't of Navy*, 131 S. Ct. 1259 (Mar.

---

[5] Defendant primarily relies on FOIA Exemption 5 in redacting and withholding responsive documents. However, several of these documents were also redacted or withheld pursuant to other FOIA exemptions. Though defendant argued that it had properly withheld certain information pursuant to these other exemptions, plaintiff failed to contest these arguments in its reply. (*See* Def.'s Reply at 1-2.) The Court will therefore treat any challenges to the sufficiency of defendant's *Vaughn* index not related to FOIA Exemption 5 as conceded. *See Buggs v. Powell*, 293 F.Supp.2d 135, 141 (D.D.C. 2003) (concluding that the court may treat as conceded any arguments raised in a dispositive motion that the plaintiff fails to address in his opposition).

7, 2011). The attorney-client privilege extends to "confidential communications from clients to their attorneys, as well as communications from attorney to their clients containing confidential information supplied by the client." *Am. Imm. Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 243 (D.D.C. 2013) (citing *Tax Analysts*, 117 F.3d at 618). The deliberative process privilege shields intra and interagency documents that are "both predecisional and deliberative." *Mapther v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). This category of documents includes "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 552 U.S. 1, 8 (2001)).

Each entry in defendant's *Vaughn* index includes the same information: (1) a document number; (2) a brief description of the document including the author, any recipients of the document, and the date and time the document was sent (if applicable); (3) the exemption relied upon for withholding or redacting the document; and (4) a narrative "justification" for withholding or redacting the document. Notably absent from these entries, however, is a specific reference—by name—to one or more of the three privileges incorporated by FOIA Exemption 5. Instead, Ms. Jih's declaration states in general terms that "HUD concluded that *nearly* all of the documents withheld are subject to the work product doctrine," "*many* of these documents are also subject to the attorney-client privilege," and "*many* of the withheld documents [also] are deliberative in that they relate to the process of recommending a particular course of action . . ." (Jih Decl. at ¶¶ 21-27) (emphasis added). Plaintiff challenges the sufficiency of the entries in defendant's *Vaughn* index in three ways.

First, plaintiff argues that defendant's *Vaughn* index is inadequate because defendant "failed to demonstrate which specific privilege applies to which particular record." (Pltf.'s Mot. at 7.) However, plaintiff fails to direct this Court to any legal authority that defendant is required to identify the relevant privilege, by name, in order to withhold or redact a document pursuant to Exemption 5. To the contrary, courts within this jurisdiction have repeatedly emphasized that a *Vaughn* index must simply "indicate[] in some descriptive way which documents the agency is withholding and which FOIA exemptions it believes apply." *ACLU v. C.I.A.*, 710 F.3d 422, 432 (D.C. Cir. 2013). Under this rubric, the government's justification for withholding or redacting a document only must establish the existence of all the "essential elements" of a valid privilege. *See Senate of the Com. of Puerto Rico*, 823 F.2d at 585; *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d at 132.[6] To be sure, it would have been helpful for defendant to identify by name which specific privilege applies to which entries in its *Vaughn* index, as opposed to relying on Jih's declaration. Yet, so long as the Court is able to determine the existence of each essential element of an incorporated privilege, defendant should not be penalized for its failure to identify a specific privilege by name. *See Gallant v. N.L.R.B.*, 26 F.3d 168, 173 (D.C. Cir. 1994) ("[T]he government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine . . .

---

[6] It should further be noted that merely identifying the name of the privilege upon which the government agency seeks to rely or identifying a particular privilege and providing a conclusory description of the document is, without question, not sufficient to discharge the government's duty under FOIA. *See Senate of the Com. of Puerto Rico*, 823 F.2d at 585 ("We do not endeavor an encompassing definition of 'conclusory assertion'; for present purposes, it is enough to observe that where no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt. The information provided by the DOJ-consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter-will not do.")

.

whether the specific claimed exemptions are properly applied.") (internal citations and quotation marks omitted.)

Second, plaintiff argues that defendant has failed to discharge its duty under FOIA because it "solely . . . used general 'buzz words' to justify its withholding." (Pltf.'s Mot. at 7.) Among the terms about which plaintiff complains are: "possible litigation," "brief to be filed," "draft brief," "internal deliberation," "suggested revisions," "conveying research," "discussing and weighing approaches," and "draft internal talking points." (*Id.* at 7-8.) In plaintiff's view, by using these stock phrases defendant has "fail[ed] to provide sufficient detail to allow Plaintiff and the Court to properly assess the exemptions claimed or the specific records to which they apply." (*Id.* at 8.) The Court disagrees.

The phrases that plaintiff derides as "buzz words" are in fact better classified as descriptive terms that help convey the relevant content of documents without divulging the privileged information that Exemption 5 is meant to protect. *See ACLU v. C.I.A.*, 710 F.3d at 432 ("[A] *Vaughn* index may also contain brief or categorical descriptions when necessary to prevent the litigation process from revealing the very information the agency hopes to protect.") An example from defendant's *Vaughn* index is instructive. In its justification for withholding document 253, the defendant writes, "[t]his document is an email chain in which attorneys are discussing and weighing approaches to take in possible forthcoming litigation." (*Vaughn* Index at 17.) This entry uses two of the phrases identified by plaintiff as "buzz words." However, these phrases provide the Court with the very details necessary to analyze which, if any, of the relevant privileges are implicated by this document. This description demonstrates the presence of both the attorney work product privilege and the attorney-client privilege and therefore the specific "approaches" being discussed as well as the particular "possible . . . litigation" cannot be

disclosed. To require HUD to provide further detail would in effect allow the *Vaughn* index requirements to swallow the very privileges Exemption 5 is designed to protect.

Third, plaintiff challenges the sufficiency of the *Vaughn* index on the grounds that defendant's narrative "justifications" fail to articulate the necessary elements of each of the three privileges upon which HUD purports to rely. First, regarding the attorney work product privilege, plaintiff contends that defendant's justifications impermissibly exclude the specific "potential or ongoing litigation" and fail to "affirmatively state . . . whether individual withheld documents were shared with third parties." (Pltf.'s Mot. at 9-11.) Second, regarding the attorney-client privilege, plaintiff contends that defendant's *Vaughn* index impermissibly fails to "indicate whether individual documents have been shared with a third party, which would result in a waiver of the attorney-client privilege" and whether the information contained in these communications is "based solely on confidential material furnished to client." (Pltf.'s Mot. at 13.) Third, regarding the deliberative process privilege, plaintiff alleges that defendant's justifications fail to demonstrate "what final decision was made, how a final decision was made, or who made that final decision." (Pltf.'s Mot. at 15.)

However, none of these alleged elements is required in order to establish the existence of the three privileges upon which defendant relies. A defendant is not required, as plaintiff argues, to identify a specific case to which a document relates in order to invoke the work product privilege. *See Judicial Watch Inv. v. Reno*, 154 F. Supp. 2d 17, 18 (D.D.C. 2001). The privilege "extends [even] to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller*, 964 F.2d at 1208.[7] This doctrine also protects

---

[7] The Court finds plaintiff's arguments regarding the work product privilege further disingenuous in light of the fact that its FOIA request focuses specifically on documents and communications related to a particular course of litigation and a particular legal theory. This is the very type of FOIA request which Exemption 5's work product privilege is meant to protect. *See, e.g.*, *Judicial Watch, Inc.*, 926 F. Supp.

13

documents generated in preparation of an amicus brief, like the brief in question here. *Strang v. Collyer*, 710 F. Supp. 9, 12-13 (D.D.C. 1989). Next, while plaintiff correctly states the legal standard for establishing the attorney-client privilege, it fails to demonstrate that the justifications in defendant's *Vaughn* index are insufficient. The entries in the *Vaughn* index specifically identify the author and recipient(s) of each communication, as well as the contents of the document. The narrative justifications also explicitly identify which communications were specifically "among attorneys" and which were not. (*See Vaughn* Index at 23-25, Docs. 302-314.) This provides a sufficient basis for plaintiff and the Court to assess whether an attorney-client relationship existed and whether the content of the communications was confidential. Finally, plaintiff simply misstates the applicable legal standard for invoking the deliberative process privilege by arguing that an agency must identify a specific final agency action. (Pltf.'s Mot. at 15). "[T]he agency need not identify a specific final agency decision." *See Dent v. Executive Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 268 (D.D.C. 2013).

Ultimately, based on a careful review of the *Vaughn* index and the parties' arguments, the Court finds that the defendant has discharged its statutory duty under FOIA. To be sure, defendant could have made this Court's job significantly easier by identifying the specific privilege upon which it relied for each entry. Plaintiff likewise could have helped this Court by identifying the individual entries within the *Vaughn* index that it felt were insufficient, instead of relying on a blunderbuss approach. The Court is nonetheless satisfied that the narrative justifications in the *Vaughn* index are sufficient to justify redacting and withholding documents under FOIA Exemption 5. Defendant is therefore entitled to summary judgment on this claim.

---

2d at 137 ("In assessing whether the proponent has carried its burden, the relevant inquiry is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (quoting *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.,* 186 F.3d 959, 968 (D.C.Cir.1999).)

**IV. SEGRABILITY**

Defendants in FOIA cases always carry a burden of showing that withheld documents contain no "reasonably segregable" factual information, 5 U.S.C. § 552(b), and plaintiff suggests that defendant has not satisfied this burden here.[8] FOIA requires that "even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information, unless the [non-exempt] portions are inextricably intertwined with exempt portions." *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002) (citing *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977)).

To show that the agency has met its segregability obligation, Ms. Jih declares under the penalty of perjury that "HUD made every reasonable effort to produce all reasonably segregable, non-exempt portions of these documents." (Jih Decl. at ¶ 19.) Plaintiff argues that this statement is insufficient because "it does not indicate which records were subject to such analysis." (Pltf.'s Mot. at 16.) However, this argument is also without merit. Ms. Jih's declaration clearly refers to "*all reasonably segregable*" material and absent evidence to the contrary, the Court must accept this government representative at her word.

---

[8] The segrability requirement does not apply to documents withheld pursuant to the work product privilege. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d at 371.

## CONCLUSION

Accordingly, and for the reasons stated above, defendant's motion for summary judgment will be **GRANTED**. Plaintiff's motion for summary judgment will be **DENIED.** A separate order accompanies this Memorandum Opinion.

/s/  
ELLEN SEGAL HUVELLE  
United States District Judge

Date: February 28, 2014